IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Edmund Goins, #276905,        ) | |
|                ) | Civil Action No. 5:12-267-JMC-KDW |
|        Petitioner,    ) | |
|                ) | |
|      vs.          ) | REPORT AND RECOMMENDATION |
|                ) | |
| Warden, Perry Correctional    ) | |
| Institution,           ) | |
|                ) | |
|        Respondent.    ) | |
| _____ ) | |

Petitioner, Edmund Goins ("Petitioner" or "Goins") is a state prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 26, 27. On July 17, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 28. On October 3, 2012, Petitioner filed a response in opposition to Respondent's Motion for Summary Judgment. ECF No. 41. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 27, be granted.

I.    Factual Background

Petitioner was indicted in July 2000 for three counts of assault and battery with intent to kill ("ABWIK"). ECF No. 26 at 1. On July 23, 2001, a jury trial was conducted before the

Honorable Gary E. Clary in Gaffney, South Carolina.  App.  1-224. [1]   Attorney Don Thompson represented Petitioner, and Solicitor Terry Goody represented the State.  App. 1.  Petitioner was convicted of one count ABWIK, and two counts of assault and battery of a high and aggravated nature ("ABHAN"), receiving a sentence of life without parole on the ABWIK conviction, and ten years consecutive on the two ABHAN convictions.   App. 217-18, 222-23.

II.  Procedural History

Trial counsel timely filed and served the notice of appeal and Petitioner, represented by Eleanor Duffy Cleary, Esq.  of the South Carolina Office of Appellate Defense, filed an *Anders*[2] brief arguing that  "the trial court erred in charging the jury in a manner that suggested the burden of proof was borne by [Petitioner]."  App. 228.  Thereafter, and pursuant to the *Anders* procedure, Petitioner submitted a pro se brief asserting the following issues: (1) "Whether Appellant was prejudiced by perjured testimony"; (2) "Whether Appellant was prejudiced by ineffective assistance of council [sic]"; (3) "Whether denial of appellant's right to bring parole eligibility to the jury's attention violate due process"; (4)"Whether the trial court erred in closing courtroom to public without hearing to determine justification."  ECF No. 26-6 at 4.  On March 17, 2003, the South Carolina Court of Appeals dismissed Petitioner's appeal, and pursuant to *Anders*, granted appellate counsel's petition to be relieved.  App. 239-40.  The remittitur was

---

[1] Citations to "App." refer to the Appendix for Writ of Certiorari as to Petitioner's claim for collateral relief in the state courts of South Carolina, which is available at ECF Nos. 26-1 through 26-4 in this habeas matter.  Page number references are to the pages as numbered in the Appendix.

[2] *See Anders v. California*, 386 U.S. 738 (1967).

2

issued on May 1, 2003.  App. 241.  Petitioner did not seek discretionary review to the South

Carolina Supreme Court.

Petitioner filed an application for post-conviction relief ("PCR") on March 9, 2004.  App.

242.   In his application Petitioner raised the grounds of ineffective assistance of counsel and

argued he was entitled to relief on the following grounds: 1) "Trial counsel failure to investigate

obvious mental health problems" and 2) "Appellant counsel's failure to raise obvious mental

health problems." App. 243.   In response, the State filed its return on August 25, 2004,

requesting an evidentiary hearing on Petitioner's ineffective assistance of counsel claims.  App.

252-56.  Petitioner subsequently filed an Amended Application for PCR on September 16, 2004

arguing that the circuit court lacked subject matter jurisdiction to convict him because his

indictments lacked the necessary elements of the offenses ABWIK and ABHAN.  App. 248.  On

September 25, 2004, an evidentiary hearing was conducted in Spartanburg, South Carolina

before the Honorable Doyet A. Early, III.  App. 258.  At the hearing Petitioner was represented

by Patrick H. Allen, Esq., while the State was represented by Assistant Attorney General Molly

R. Crum.  *Id.*  Petitioner and his former defense attorney, Don Anthony Thompson, testified at

the hearing.  App.  261-301. On July 3, 2006, the PCR court issued an order granting Petitioner

relief and making the following findings of facts and conclusions of law:

> Based upon an examination of the Post-Conviction Relief file and Pleadings, and
> upon review of the evidence submitted at the hearing in the form of medical
> records and testimony. I hereby make the following:

### FINDINGS OF FACT

(1) I find that this Court has jurisdiction over the parties and the subject matter of this
action.

3

(2) I find as fact that on May 30, 2000, the Applicant was being held in the maximum security section of the Cherokee Detention Center ("C Max") while awaiting trial on unrelated charges. At some point on the evening of the 30th, the Applicant, along with a few other inmates, flooded their cells. While the water was being mopped up from the floor by other inmates, known as "trustees," the Applicant began kicking the door of his cell and demanding his medication. Eventually, Detention Officer Terry Blackwell, accompanied by Detention Officer Nicky Wisher, opened the door to the Applicant's cell. The Applicant had concealed the window to his cell with toilet paper. He had also removed all of his clothes and placed his underwear on his head. Shortly after Officers Blackwell and Wisher opened the door, the Applicant burst out of his cell with a pillow in one hand and a "long object" in the other hand. (T. p. 49) The object being brandished by the Applicant turned out to be part of a mop which had been in his cell. Officer Blackwell sprayed the Applicant with capstun and a melee ensued. During the melee, which was captured on videotape, the Applicant made thrusting motions with the piece of the mop, causing superficial injuries to Officer Blackwell. The Applicant was eventually subdued by Officers Blackwell and Wisher along with the help of a trustee, Marcus Ellis. In his closing statement, Solicitor Gowdy characterized the Applicant's behavior as, "[W]hat you see on the videotape is a madman. He is flailing around at whatever he could hit." (T. p. 183). A few hours prior to this incident, Officer Blackwell had provided the Applicant with his supper. At that time, Officer Blackwell had no altercations or disagreements with the Applicant. In fact, according to Officer Blackwell, the Applicant thanked him for his supper. (T. p. 45)

(3) I find that at the time the above-referenced incident took place, the Applicant suffered from bi-polar disorder and manic depression. At his trial, he testified that he was manic depressive and had to take lithium and thorazine to keep "my chemical imbalance at a level state." *(T. p. 125)* He also testified that in the past he had been diagnosed as "bi-polar" several times. Id. Although the claimant presented no expert medical testimony at either his trial or his PCR hearing, I find that his testimony is credible with regard to his medical conditions as it is corroborated by medical records from Dorthea Dix Mental Hospital and Southeastern Regional Medical Health Center which were submitted at the evidentiary hearing. The records from Dorthea Dix Psychiatric Hospital establish that in October of 1997, Mr. Goins was involuntarily committed after he had removed his clothes and climbed to the top of a water tower proclaiming that he just needed to be "closer to my God." At the time of that incident, the Applicant was diagnosed with mood disorder, bi-polar manic episode with severe psychotic symptoms, polysubstance related disorder, and anti-social personality disorder. I find credible the Applicant's testimony at trial that as a result of these disorders he gets hyperactive and became very agitated when he is not medicated.

4

(4) I find that the Applicant's trial attorney did not obtain copies of the Applicant's medical records or research the Applicant's medical history prior to his trial.

(5) I find that the Applicant's trial attorney met with the Applicant on two or three occasions between the time the Applicant was indicted and the date of trial.

(6) I find that the Applicant's trial attorney did not request that the Applicant undergo a psychiatric evaluation prior to trial. I further find that no medical or psychiatric testimony was presented to the jury to corroborate the Applicant's testimony regarding his bi-polar disorder or the impact that such a condition might have had on his behavior at the time he committed the acts alleged in the indictments.

(7) I find that the Applicant's trial attorney did not request jury charges pertaining to temporary insanity, diminished capacity or mental incompetence.

App. 436-438.

The PCR court concluded:

Applying the above-listed Findings of Fact to the applicable law, I make the following Conclusions of Law:

## CONCLUSIONS OF LAW

(1) I conclude that the Applicant's allegation that trial counsel failed to advise him of the McNaughten Defense and/or his constitutional right to enter a plea of not guilty by reason of temporary insanity does not, by itself, rise to the level of ineffective assistance of counsel. Under Strickland v. Washington, 466 US 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) the Applicant must show not only deficient performance by trial counsel, but also that he was prejudiced as a result of this ineffective assistance. To meet the prejudice prong under Strickland, a PCR applicant must show some evidence of insanity or show that with the exercise of due diligence, an insanity defense could have been developed. Jeter v. State of South Carolina, 417 S.E.2d 594, 594 (S.C. 1992). In the instant case, although there is evidence that the Applicant suffers from a mental disease, there is no evidence to suggest that there is a reasonable probability that he would have prevailed on the merits had this defense been raised. Trial counsel testified at the PCR hearing that the Applicant appeared to be lucid, understood the nature of the charges against him, and was able to assist in his own defense. Based on the evidence presented at the PCR hearing, it would be speculative to conclude that the Applicant would have been successful with an insanity defense even if one had been pursued by trial counsel. See Dempsey v. State of South Carolina, 610 S.E.2d. 812 (S.C. 2005) Therefore, with regard to an insanity defense, I conclude that the Applicant fails to meet the second prong required under Strickland.

(2) I also conclude that trial counsel's failure to pursue a "diminished capacity" defense was not, by itself, evidence of ineffective assistance of counsel. First, the State of South Carolina does not recognize a defense of "diminished capacity." Gill v. State, 552 S.E.2d 26 (S.C. 2001).  Moreover, a "diminished capacity" defense is available only when the defendant is charged with a specific intent crime. See State of North Carolina v. Page, 488 S.E.2d 225 (N.C. 1997). In the instant case, the Applicant was charged with ABIK, which is a general intent crime. Therefore, for either of the above-listed reasons, trial counsel's failure to pursue a "diminished capacity" defense was not ineffective assistance of counsel.

(3) I further conclude that Applicant's allegations regarding his very limited contact with the Public Defender in the year between when his indictments were handed down and the date of his trial do not, by themselves, satisfy either the first or seconds prongs of Strickland. The record indicates that the Applicant had an opportunity to discuss trial strategy with trial counsel on several occasions and did call two witnesses in his defense.

(4) I do conclude, however, that the combination of trial counsel's failure to present evidence regarding the Applicant's mental disorder, combined with his limited contact with the Applicant prior to trial, does in fact rise to the level of ineffective assistance of counsel in light of the very serious charges the Applicant was facing. Because of the Applicant's prior record, he was facing life in prison without parole. A conviction on any one of these three charges of ABIK automatically triggered a sentence of life without parole. Conversely, a conviction on ABHAN, a lesser included offense, would have been a misdemeanor which carried a maximum sentence of ten years.

ABHAN is the unlawful act of violent injury to another accompanied by circumstances of aggravation. State v. Fennell, 531 S.E.2d. 512 (S.C 2000). Circumstances of aggravation include the use of a deadly weapon, the intent to commit a felony, infliction of serious bodily injury, great disparity in the ages or physical conditions of the parties, difference in gender, the purposeful infliction of shame and disgrace, taking indecent liberties or familiarities with a female, and resistance to lawful authority. Id. ABIK is an unlawful act of violent injury to the person of another with malice aforethought, either express or implied. State v. Sutton, 532 S.E.2d 283 (S.C. 2000). Malice is defined as the wrongful intent to injure another with "a wicked or depraved spirit intent on doing wrong." State v. Kelsey, 502 S.E.2d 63 (S.C. 1998).

In this case, the trial judge instructed the jury that "expressed (sic) malice is shown when a person speaks words which express hatred or ill will for another, or when that person prepared beforehand to do the act which was later accomplished." (T. p. 202) "[L]ying in wait for a person" or "any other acts of

preparation going to show that the deed was done-to show that the deed was within the defendant's mind would be expressed (sic) malice." Id. The trial judge defined "inferred" malice as when "the deed is done with a deadly weapon" or objects that can become deadly weapons when the facts show they have been used to inflict serious bodily harm or death." (T. p. 202--203). In short, the only difference between ABHAN and ABIK is the element of "malice aforethought" which needs to be present for an ABIK conviction.

(5) I conclude that if a jury had been exposed to evidence of the Applicant's prior episode of decomposition where he stripped off his clothes and engaged in aberrant behavior, there is a reasonable probability sufficient to undermine confidence in the outcome of this trial, that the jury would have interpreted the Applicant's conduct on May 30, 2000, as impulsive and dangerous, but insufficient to support a finding of "malice aforethought." Strickland, 466 U.S. 668, 104 S.Ct. 2052, L.Ed 2d 674 (1984). Two of the aggravating circumstances which give rise to ABHAN are "use of a deadly weapon" and "resistance to lawful authority." Fennell, 531 S.E.2d. 512 (S.C. 2000). In this case, even if the jury were to find that the mop handle was a deadly weapon and was used against the lawful authority of detention officer, if the jury had concluded that the Applicant's mental state was delusional. i.e., he thought he was defending himself, there is a reasonable probability that a jury would have returned three convictions on ABHAN, as opposed to two convictions on ABHAN and one for ABIK.

## ORDER

Based on the foregoing, this Court finds that the Applicant has established that he received ineffective assistance of counsel at his trial, and it is therefore ORDERED that his current convictions are vacated and that he receive a new trial on each of the indictments he was convicted on, pending the refiling of charges by the State.

App. 438-442.

Respondent filed a Rule 59(e), FRCP, Motion to Alter or Amend, which was denied on September 26, 2006. App. 449. Respondent timely filed a Notice of Appeal and on July 30, 2007, Respondent filed a Petition for Writ of Certiorari to the South Carolina Supreme Court arguing that "the post-conviction relief court err[ed] in concluding that trial counsel was ineffective when Respondent presented no probative evidence of deficiency or prejudice and the

court's ruling improperly relied on the cumulative effect doctrine, applied an incorrect standard of review and was purely speculative." ECF 26-9 at 3.   Thereafter, Petitioner filed his Return to the Petition for Writ of Certiorari and Respondent filed a Reply to Petitioner's Return.  ECF Nos. 26-10, 26-11.  The appeal was subsequently transferred to the South Carolina Court of Appeals pursuant to Rule 227(1), SCACR.  ECF No. 26-12.

On March 11, 2009, the South Carolina Court of Appeals granted the Petition for Writ of Certiorari and both parties filed briefs with the court.  ECF Nos. 26-14, 26-15, 16-16.  On June 29, 2012, the South Carolina Court of Appeals issued an ordering reversing the grant of post-conviction relief and affirming Petitioner's convictions.  ECF No. 26-17.  Petitioner's petition for rehearing was denied.   ECF No.  26-20. Petitioner attempted to seek discretionary review in the South Carolina Supreme Court, a request which the court dismissed on January 11, 2012. ECF No. 26-23.  The remittitur was issued on January 13, 2012. ECF No. 26-24.   This federal habeas petition followed on January 26, 2012.

III. Discussion

A.     Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus, quoted verbatim:

**GROUND ONE**:  Did the trial court violate Petitioner's Fourteenth Amendment right to due process of law when the trial court erred in charging the jury in a manner that unduly suggested the burden of proof was borne by Petitioner?

**Supporting facts:** see attached memorandum of law and a more thorough discussion on the facts and evidence presented in state court.

**GROUND TWO:**  Did the State's highest court unreasonably apply clearly established federal law based on the facts and evidence present in the state court in failing to find

8

counsel ineffective for failing to present expert evidence regarding Petitioner's mental disorder?

**Supporting facts**: see attached issue with more thorough statement of facts and evidence presented in the state court.

ECF Nos. 1 at 5, 6; 1-1 at 9, 11.

B.      Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248.

C.     Habeas Corpus Standard of Review

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately

10

exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.  Here it is undisputed that Petitioner met exhaustion requirements.  ECF No. 26 at 9.

D.     Merits Analysis

A federal court may issue a writ of habeas corpus on claims adjudicated on their merits in state court only if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d); *Cummings v. Polk*, 475 F.3d 230, 237 (4th Cir. 2007) (internal quotation marks omitted).  A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an opposite result. *Lewis v. Wheeler*, 609 F.3d 291, 300 (4th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).  Stated differently, to obtain federal habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011). "[S]o long as 'fairminded jurists could disagree on the correctness of [a] state court's decision,'" a state court's adjudication that a habeas claim fails on its merits cannot be overturned by a federal court. *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus,

11

"even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

### 1. Ground One: Improper jury instruction

Petitioner contends that the trial court improperly charged the jury when it gave the jury "an unconstitutional jury instruction that placed the burden on Petitioner to prove his innocence." ECF No. 1-1 at 11-12. Petitioner challenges the following instruction given to the jury:

> Now, what is reasonable doubt? A reasonable doubt is the kind of doubt that would cause a reasonable person to hesitate to act. Now, the state has the burden of proving the defendant guilty beyond a reasonable doubt. . . .Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. Now, there are very few things in this world that we know with absolute certainty. And in criminal cases the law does not require proof that overcomes every possible doubt. If based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find the defendant guilty. If on the other hand you think there is a real possibility that the defendant is not guilty, you must give the defendant the benefit of the doubt and find him not guilty.

ECF No. 1-1 at 12. Petitioner argues that the above quoted instruction "does not provide for acquittal if the state does not prove its case beyond a reasonable doubt." *Id.* at 13. Petitioner contends that "a reasonable jurist could have concluded that if the defendant did not show there is a real possibility he is not guilty, he should be found guilty even if the state has not proven its case." *Id.* Petitioner argues that the jury instruction was unconstitutional and the "State Appellate Court unreasonably applied clearly established federal law to the facts of the case based on the evidence present in the state courts." *Id.*

Respondent contends the South Carolina Court of Appeals addressed this argument during Petitioner's appeal and the court's ruling that found this issue to be without merit is entitled to deference by this court. ECF No. 26 at 16. Respondent further argues that the record before the court shows that the trial court's instructions to the jury were proper and did not shift the burden of proof to the Petitioner. *Id.* at 18.

Jury instructions must be viewed as a whole and there is error only if the petitioner proves a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution. *Boyde v. California*, 494 U.S. 370, 380-81 (1990); *see also Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The Court explained that this standard was a "likelihood" of misinterpretation as opposed to a "slight possibility" of misinterpretation, and that a juror could have misinterpreted an instruction is different from the reasonable likelihood that the juror did misinterpret the instruction under the standard in *Estelle*. *See Weeks v. Angelone*, 528 U.S. 225, 236 (2000). The undersigned has reviewed the record and the jury instructions in totality and finds that in reading the charge as a whole, a juror would not have reasonably believed that Petitioner had the burden of proof regarding his guilt. Petitioner has not shown that the Court of Appeals' decision denying Petitioner's appeal was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See Williams v. Taylor*, 529 U.S. 362, 399 (2000). Accordingly, the undersigned recommends that this claim be dismissed. *See Adams v. Aik*en, 41 F.3d 175, 182 (4th Cir. 1994) (affirming the denial of habeas petition finding that there was not a

reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to establish guilt beyond a reasonable doubt).

2. Ground Two: Ineffective Assistance of Counsel

Petitioner contends that he was denied effective assistance of counsel and a fair trial when trial counsel failed to retain and call an expert witness regarding Petitioner's mental illness. ECF No. 1-1.  Petitioner argues that the PCR court was correct when it granted Petitioner's PCR application and that the state appellate court "unreasonably applied clearly established federal [law]" when it reversed the PCR court's decision finding that PCR counsel failed to have an expert witness testify during the PCR hearing.  *Id.* at 17.  Respondent contends that Petitioner's claims are without merit and that this issue was determined by the South Carolina Court of Appeals which reversed the grant of post-conviction relief and that the Court of Appeals' opinion is entitled to deference by this court.  ECF No. 26 at 19.

To prevail on an ineffective assistance of counsel claim, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 695 (1985). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689.  It is Petitioner's burden to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. With respect to *Strickland's* prejudice prong, Petitioner is not required to show "that counsel's deficient conduct more likely than not altered the outcome" of his trial, but instead must establish "a probability

14

sufficient" that counsel's deficient conduct undermined confidence in the outcome of the trial.

*Porter v. McCollum,* 558 U.S. 30, 130 S.Ct. 447, 455-56 (2009).

In evaluating an ineffective assistance of counsel claim under §2254(d), the Supreme

Court explained that:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 131 S.Ct. at 788 (internal citations omitted).

As noted above, the PCR court granted Petitioner post-conviction relief, finding that

Petitioner's trial counsel's "failure to present evidence regarding [Petitioner's] mental disorder,

combined with his limited contact with [Petitioner] prior to trial" rose "to the level of ineffective

assistance of counsel in light of the very serious charges [Petitioner] was facing."  App. 440. The

PCR court concluded that

> if a jury had been exposed to evidence of [Petitioner's] prior episode of decomposition where he stripped off his clothes and engaged in aberrant behavior, there is a reasonable probability sufficient to undermine confidence in the outcome of this trial, that the jury would have interpreted the Applicant's conduct on May 30, 2000, as impulsive and dangerous, but insufficient to support a finding of "malice aforethought." <u>Strickland</u>, 466 U.S. 668, 104 S.Ct. 2052, L.Ed 2d 674 (1984). Two of the aggravating circumstances which give rise to ABHAN are "use of a deadly weapon" and "resistance to lawful authority." <u>Fennell</u>, 531 S.E.2d. 512 (S.C. 2000).  In this case, even if the jury were to find that the mop handle was a deadly weapon and was used against the lawful authority of detention officer, if the jury had concluded that the [Petitioner's] mental state was delusional. i.e., he thought he was defending himself, there is a reasonable probability that a jury would have returned three convictions on ABHAN, as opposed to two convictions on ABHAN and one for ABIK.

App. 441. The South Carolina Court of Appeals reversed the PCR court's grant of post-conviction relief finding "that the PCR court erred as a matter of law in determining that [Petitioner] was prejudiced by the failure to introduce [evidence regarding Petitioner's mental disorder and limited contact with trial counsel before trial]." ECF No. 26-17 at 3. The Court of Appeals found that

> the PCR judge based his analysis upon the fact that a jury could interpret the applicant's conduct as impulsive and dangerous, but not with malice aforethought; thus the court opined the jury could return a verdict of ABHAN, as opposed to the greater offense of ABWIK.

*Id.* The Court of Appeals held that the PCR court's analysis "was tantamount to a recognition of the defense of diminished capacity" which South Carolina does not recognize. *Id.* The court concluded that "while acknowledging [Petitioner] testified at his criminal trial about his bipolar mental condition and his manic depression, we find [Petitioner] failed to establish a probability sufficient to undermine confidence in the outcome of the trial." *Id.* The court also found that the PCR court erred in "granting relief on [Petitioner's] two convictions for the lesser included offenses of ABHAN based on cumulative error, as there is no probative evidence of prejudice in the record to support those findings." *Id.*

Although not clear from the face of the order, the Court of Appeals appears to hold that Petitioner's trial counsel's failure to investigate his mental health issues was not prejudicial to the outcome of the trial because Petitioner's mental health issues can only be offered as evidence that he was insane at the time of the assault or incompetent at the time of trial, and Petitioner does not seek to offer such evidence. Instead the Court of Appeals found that evidence concerning Petitioner's mental health would have been offered at trial to support the defense of

16

diminished capacity, and because South Carolina does not recognize such a defense, Petitioner is not able to show that counsel's purported failures undermined the confidence in the outcome of the trial.  Upon review of the arguments before the court, the undersigned finds that Petitioner has not shown that the Court of Appeals' reversal of his grant of post-conviction relief was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786-87.  As such, Petitioner has not shown that the South Carolina Court of Appeals' findings and conclusions were contrary to, or an unreasonable application of, the *Strickland* standard.  The undersigned recommends that Ground Two of Petitioner's habeas petition be dismissed.

IV. Conclusion

The undersigned has considered Petitioner's grounds for habeas corpus relief and recommends that the Petition be dismissed. Accordingly, for the foregoing reasons, the court recommends that Respondent's Motion for Summary Judgment, ECF No. 27, be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

November 29, 2012                                   Kaymani D. West
Florence, South Carolina                           United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**